UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROGER R. CRANE, JR,

                                Plaintiff,

- vs -

POETIC PRODUCTS LIMITED,

                                Defendant.
-----------------------------------------------------------------

POETIC PRODUCTS LIMITED,

**Case No. 07 Civ. 7063 (BSJ) (FM)**

                                Counterclaimant,

- vs -

ROGER R. CRANE, JR,

                                Counterclaim Defendant.


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


                                                              NIXON PEABODY LLP
                                                              Attorneys for Plaintiff
                                                              437 Madison Avenue
                                                               New York, New York 10022


Of Counsel:
Frank H. Penski
Tamar Y. Duvdevani

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

I.   THE AUTHORITY CITED BY DEFENDANT EXEMPLIFIES CRANE'S POSITION
     THAT COPYRIGHT CASES ARE ROUTINELY DECIDED ON SUMMARY
     JUDGMENT MOTIONS, ESPECIALLY WHERE, AS HERE, THE ISSUE
     CONCERNS NON-COPYRIGHTABLE, HISTORIC ELEMENTS ............................... 2

II.  POETIC PRODUCTS' ARGUMENT THAT IT REQUIRES DISCOVERY TO
     OPPOSE CRANE'S MOTION FAILS............................................................................ 6

III. AS A MATTER OF LAW, DEFENDANT CANNOT "RESERVE ITS RIGHTS" TO
     SUBSTANTIVELY OPPOSE PLAINTIFF'S MOTION, AND, AS SUCH, LOST ITS
     OPPORTUNITY TO DO SO ....................................................................................... 11

IV.  SUMMARY JUDGMENT MUST BE GRANTED IN FAVOR OF CRANE ................ 12

CONCLUSION .................................................................................................................. 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROGER R. CRANE, JR,

                                  Plaintiff,

- vs -

POETIC PRODUCTS LIMITED,

                                  Defendant.

-----------------------------------------------------------------

POETIC PRODUCTS LIMITED,

                                  Counterclaimant,

- vs -

ROGER R. CRANE, JR,

                                    Counterclaim Defendant.

Case No. 07 Civ. 7063 (BSJ) (FM)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

      In the Opening Brief, Crane demonstrated that the Motion for Summary Judgment should be granted in favor of Crane because (1) no substantial similarity exists between *The Last Confession* and *In God's Name* (Opening Br. at 22-28); (2) any use of *In God's Name* would be a transformative, and thus permissible, use of the book (Opening Br. at 29-30); (3) Poetic Products' allegations fail under British law (Opening Br. at 30-32); and (4) Poetic Products' unfair competition claim is preempted by the Copyright Act. (Opening Br. at 32-33). Poetic Products did not oppose Crane's Motion. Instead of substantively responding to Crane's

arguments – or even submitting a Counter-Rule 56.1 Statement – Poetic Products made a motion to stay the Motion for Summary Judgment, arguing only that (1) courts disfavor granting summary judgment in copyright-infringement actions, and (2) the Court should deny the Summary Judgment Motion as premature. (Poetic Products Br. at 2-8.) Poetic Products' arguments fail.

As discussed fully below, Poetic Products' assertion that this case is not one that can be decided on summary judgment is wrong. Indeed, the only Second Circuit case Poetic Products cites to support its position not only affirms the grant of summary judgment in a copyright-infringement action, it contains facts nearly identical to those at hand, where the two works were both based on the same historical event. Moreover, not one of Poetic Products' list of purported reasons it needs discovery would shed light on the dispositive issues raised in Crane's Motion. Clear precedent has established that the only evidence the Court needs to decide this action is the works themselves, which Crane has submitted. For all of the reasons discussed in the Opening Brief, which Poetic Products has failed to oppose, summary judgment should be granted in favor of Crane, and Poetic Products' Motion to Stay should be denied.

**I.   THE AUTHORITY CITED BY DEFENDANT EXEMPLIFIES CRANE'S POSITION THAT COPYRIGHT CASES ARE ROUTINELY DECIDED ON SUMMARY JUDGMENT MOTIONS, ESPECIALLY WHERE, AS HERE, THE ISSUE CONCERNS NON-COPYRIGHTABLE, HISTORIC ELEMENTS**

Poetic Products' opening argument in its Memorandum of Law in Support of Its Motion to Stay Plaintiff's Motion for Summary Judgment ("Poetic Products Br.") is that courts "disfavor" granting summary judgment in copyright cases. (Poetic Products Br. at 2-3.) This assertion is not only directly contradicted by the long list of cases cited by Crane in his Opening

Brief[1] wherein courts granted summary judgment in copyright cases (Opening Br. at 12-13), it is contradicted by Poetic Products' own cited authority.

In support of its initial argument, Poetic Products cites to one Second Circuit case, *Hoehling v. Universal City Studios, Inc*., 618 F. 2d 972 (2d Cir.), *cert. denied*, 449 U.S. 841 (1980), and quoted the Court's opinion that "[b]ecause substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation." *Id*. at 976 (citation omitted) (Poetic Products Br. at 2.). The Court, however, did not stop its analysis where Poetic Products stopped the quotation:

> Because substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation. Nevertheless, while [*Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946)]'s influence in other areas of the law has been diminished, a series of copyright cases in the Southern District of New York have granted defendants summary judgment when all alleged similarity related to non-copyrightable elements of the plaintiff's work. These cases signal an important development in the law of copyright, permitting courts to put 'a swift end to meritless litigation' and to avoid lengthy and costly trials. Drawing on these cases, Judge Metzner assumed both copying and substantial similarity, but concluded that all similarities pertained to various categories of non-copyrightable material. Accordingly, he granted appellees' motion for summary judgment. We affirm the judgment of the district court.

*Id*. (internal citations omitted) (emphasis added). The Court affirmed the decision of the district court, which granted the motion for summary judgment because all similarities between the works were of unprotectible elements. *See id*. at 980. Accordingly, *Hoehling*, cited by Poetic

---

[1] A decision of noninfringement as a matter of law on a motion for summary judgment is not only demonstrated in the cases cited in the Opening Brief, but also in the very recent case *Mallery v. NBC Universal, Inc*., 07 Civ. 2250, 2007 U.S. Dist. LEXIS 88960, at *5-6 (S.D.N.Y. Dec. 3, 2007). Plaintiffs sued NBC Universal and others for copyright infringement alleging that the television series *Heroes* infringes the copyrights held by the plaintiffs in their novel *The Twins: Journey of the Soul*. *See id*. at *1. Judge Cote, after reviewing both works, converted the defendants' motion to dismiss into a motion for summary judgment. *See id*. Granting summary judgment in favor of defendants, Judge Cote held that "it is readily apparent that [plaintiffs'] claims are wholly without merit, as nearly every instance of alleged similarity between Heroes and the plaintiffs' work relates to unprotectable ideas rather than protectable expression and, viewed more broadly, the 'total concept and feel' of these works are profoundly different." *Id*. at *16.

Products, supports Crane's position that the instant matter is not only ripe for adjudication, but must be decided in favor of Crane.

*Hoehling* concerned two works, one factual, one slightly more literary, that recounted the introduction, last voyage, and tragic destruction of the Hindenburg zeppelin, the "colossal dirigible constructed in Germany during Hitler's reign." *Id*. at 974-75. Michael MacDonald Mooney, the author of the later work and appellee, acknowledged that he consulted appellant A.A. Hoehling's book, and that he relied on it for some details. *See id*. at 976. Hoehling instituted an action against Mooney and Universal City Studios (who made a motion picture out of a screenplay adaptation of Mooney's book). *See id*. Appellees moved for summary judgment against Hoehling, arguing that, like Crane here, no substantial similarity of protectible elements existed between the works. *See id*. at 977. Also like here, the parties did not dispute that the non-moving party held a valid copyright for his work, nor did they dispute that the moving party had access to that work. *See id*. at 977.

Affirming the grant of summary judgment, the Court explained that non-copyrightable elements are not subject to protection, and that "an interpretation of an historical event" is "not copyrightable as a matter of law." *Id*. at 978. Specifically, the Court explained that the Second Circuit "has permitted extensive reliance on prior works of history." *Id*. at 978 n.5 (citing *Gardner v. Nizer*, 391 F. Supp. 940 (S.D.N.Y.1975) (the story of the Rosenberg trial not copyrightable); *Fuld v. National Broadcasting Co.*, 390 F. Supp. 877 (S.D.N.Y.1975) ("Bugsy" Siegel's life story not copyrightable); *Greenbie v. Noble*, 151 F. Supp. 45 (S.D.N.Y.1957) (the life of Anna Carroll, a member of Lincoln's cabinet, not copyrightable)). "To avoid a chilling effect on authors who contemplate tackling an historical issue or event, <u>broad latitude must be granted to subsequent authors who make use of historical subject matter, including theories or</u>

plots." *Hoehling,* 618 F.2d at 978 (emphasis added). As such, thematic or plot-driven similarities, if any, between *The Last Confession* and *In God's Name* are not actionable as a matter of law.

*Hoehling* additionally stands for the proposition discussed in the Opening Brief that facts are not subject to copyright protection. *See id*. ("The same reasoning governs Hoehling's claim that a number of specific facts, ascertained through his personal research, were copied by appellees. The cases in this circuit, however, make clear that factual information is in the public domain.") "Each appellee had the right to avail himself of the facts contained in Hoehling's book and to use such information, whether correct or incorrect, in his own literary work." *Id*. (internal quotation marks omitted.) Accordingly, the facts that are contained in *In God's Name* are unprotectible.

Of final relevance to the instant matter is the *Hoehling* ruling that scenes a faire, including, for example, the historical characters, places, and quotations surrounding the real-life Pope John Paul I, are "not copyrightable as a matter of law." *Id*. at 979-80. In *Hoehling*, these similarities amounted to such things as "a scene in a German beer hall, in which the airship's crew engages in revelry prior to the voyage," "common German greetings of the period, such as 'Heil Hitler,' or songs, such as the German National anthem." *Id*. at 979. "These elements . . . are merely scenes a faire, that is, 'incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic.' Because it is virtually impossible to write about a particular historical era or fictional theme without employing certain 'stock' or standard literary devices, we have held that scenes a faire are not copyrightable as a matter of law." *Id*. (internal citations omitted). Likewise, it would have been impossible for

Crane to author a play about Pope John Paul I and his Vatican without employing many of the same incidents, characters or settings also used by David Yallop in *In God's Name*.

In sum, Poetic Products' Second Circuit authority does nothing to promote its position that copyright cases are not amenable to summary judgment motions, and instead provides strong support for Crane's motion because, like the works in *Hoehling*, *The Last Confession* and *In God's Name* share only non-copyrightable elements.

## II.   POETIC PRODUCTS' ARGUMENT THAT IT REQUIRES DISCOVERY TO OPPOSE CRANE'S MOTION FAILS

Poetic Products' only other point in support of its Motion to Stay is that Crane's Summary Judgment Motion is premature because discovery has not occurred.  (Poetic Products Br. at 3-6.)  Not one item in the laundry-list of asserted reasons it needs discovery, however, relates to Crane's Motion, and none are necessary for the Court to decide the pivotal issue of substantial similarity between *The Last Confession* and *In God's Name*.

Under Rule 56(f) of the Federal Rules of Civil Procedure, parties lacking information necessary to oppose a summary judgment motion may seek further discovery.  *See, e.g., Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 573 (2d Cir. 2005).  "To oppose a motion on the basis of Rule 56(f), a party must file an affidavit detailing: '(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" *McAllan v. Von Essen*, 01 Civ. 5281, 03 Civ. 8818, 2007 U.S. Dist. LEXIS 71286, at *6-7 (S.D.N.Y. Sep. 27, 2007) (quoting *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999)).

Poetic Products has failed to satisfy all prongs of this test.  In both the Poetic Products Brief and the Christelette A. Hoey 56(f) Declaration ("Hoey Decl."), Poetic Products offers "a

sampling of discovery topics that Poetic Products will seek during discovery that are relevant to the merits of this <u>dispute</u>." (Hoey Decl. ¶ 3.) (emphasis added.)  These topics are listed below, and as explained in each bullet-point, none justify Poetic Products' position:

- Crane's "authorship" of *The Last Confession* (Hoey Decl. ¶ 4; Poetic Products Br. at 3.)  The facts surrounding Crane's authorship are irrelevant to whether the works are substantially similar, *see* Opening Br. at 13-14; 22-29, and Poetic Products has provided no authority to suggest otherwise.  Moreover, Poetic Products admitted in its Answer that "Crane authored a play entitled *The Last Confession*."  (Answer at ¶ 1.)

- Crane's attempts to "commercialize" *The Last Confession* in the U.S.  (Hoey Decl. ¶ 5; Poetic Products Br. at 4.)  Such attempts are irrelevant to whether the works are substantially similar, *see* Opening Br. at 13-14; 22-29, and Poetic Products has provided no authority to suggest otherwise.

- Crane's extent and use of *In God's Name* in researching and writing *The Last Confession*.  (Hoey Decl. ¶ 6; Poetic Products Br. at 4.)  The extent to which Crane used *In God's Name* is irrelevant to whether the works are substantially similar, *see* Opening Br. at 13-14; 22-29, and Poetic Products has provided no authority to suggest otherwise.

- Crane's notes because "they may show whether and to what extent" Crane used *In God's Name* as a source.  (Hoey Decl. ¶ 7; Poetic Products Br. at 4.)  As stated above, the extent to which Crane used *In God's Name* is irrelevant to whether the works are substantially similar, *see* Opening Br. at 13-14; 22-29, and Poetic

    Products has provided no authority to suggest otherwise. Indeed, Crane has already admitted to use of *In God's Name* as a source of historical facts.

- Crane's research that he compiled in authoring *The Last Confession*. (Hoey Decl. ¶ 8; Poetic Products Br. at 4.) Any research files that Crane may have retained are irrelevant to whether *In God's Name* and *The Last Confession* are substantially similar, *see* Opening Br. at 13-14; 22-29, and Poetic Products has provided no authority to suggest otherwise.

- The Evening Standard interview of actor David Suchet which states that *The Last Confession* is based on *In God's Name*. (Hoey Decl. ¶¶ 9, 10; Poetic Products Br. at 4.) Any such comment uttered by Mr. Suchet or written by the author of the article is irrelevant to whether *In God's Name* and *The Last Confession* are substantially similar, *see* Opening Br. at 13-14; 22-29, and Poetic Products has provided no authority to suggest otherwise.

- Discovery relating to co-authorship or joint authorship of *The Last Confession*. (Hoey Decl. ¶ 11; Poetic Products Br. at 4.) Any such discovery is irrelevant to whether *In God's Name* and *The Last Confession* are substantially similar, *see* Opening Br. at 13-14; 22-29, and Poetic Products has provided no authority to suggest otherwise. Moreover, Poetic Products admitted in its Answer that "Crane authored a play entitled *The Last Confession*." (Answer at ¶ 1.)

The remaining topics listed in the Hoey Declaration relate to general assertions of the parties' claims and counterclaims, such as "Poetic Products is entitled to discovery regarding the full extent of infringement and the damages related thereto." (Hoey Decl. ¶ 12.) Yet like the topics bullet-pointed above, none of the remaining general claim-based topics relate to the issue

of substantial similarity, and are irrelevant to the instant Motion for Summary Judgment. (*See* Opening Br. at 13-14; 22-29.)

Generally, the reason why Poetic Products' Motion fails is simple: the only two items that the Court requires to decide the Motion for Summary Judgment are the works themselves, and Crane has provided to the Court copies of both *The Last Confession* and *In God's Name*. (*See* Duvdevani Decl. Exs. 1 and 2.) In *Flaherty v. Filardi,* 388 F. Supp. 2d 274, 291 (S.D.N.Y. 2005), the defendants, like Crane here, conceded access to plaintiff's screenplay and also conceded, like here, that plaintiff owned a valid copyright to her screenplay, "Amoral Dilemma." *Id*. at 278. Accordingly, "[t]he relevant inquiry," explained the court, "is whether 'Bringing Down the House' contains elements which bear substantial similarity to protected elements of 'Amoral Dilemma.'" *Id*. at 286. In *Flaherty*, plaintiff, in her response to the motion for summary judgment, also made an application pursuant to Federal Rule of Civil Procedure 56(f) to allow her to obtain discovery prior to the court's ruling on the motion. *See id*. at 291. The court denied the plaintiff's 56(f) application, stating that:

> Plaintiff has failed to establish that there is any material issue as to which additional discovery is needed in order for the Court to decide the instant motion for summary judgment. Because the relevant inquiry for summary judgment on the copyright and related claims regarding the movie focuses on the substantial similarities between Plaintiff's screenplay and Defendants' finished film, both of which are in evidence, the Court finds that there is sufficient evidence upon which to decide Defendants' motion for partial summary judgment and that Plaintiff does not require additional discovery to enable her to respond to the material elements of Defendants' factual proffer or otherwise secure facts essential to justify her opposition.

*Id*. *Flaherty* contains exactly the same set of circumstances as here: (1) the Court has the two works; and (2) the relevant inquiry for summary judgment on the copyright and related claims focuses on the substantial similarities between *The Last Confession* and *In God's Name*. *See id*. Accordingly, this Court has "sufficient evidence" upon which to decide Crane's Summary

Judgment Motion, and Poetic Products "does not require additional discovery to enable [it] to respond to the material elements." *Id*. As such, Poetic Products' 56(f) application should be denied. *See also, e.g., Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 395 (SD.N.Y. 2005) (Denying plaintiff's motion for additional discovery pursuant to Rule 56(f) because "[t]he documents requested by [plaintiff] would not create a material issue of fact as to the originality of the [plaintiff's] Photograph, and thus would not alter the disposition of this case. [Plaintiff] requests discovery related to, inter alia, the meeting between Craig Martin and Kate Spade, the production and commercial use of the Kate Spade Photograph, and financial records concerning the advertising campaign. These documents, if they exist, could not alter the analysis as to the protectibility of the [plaintiff's] Photograph. Thus, [plaintiff's] motion under Rule 56(f) is denied."); *c.f., Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir. 1981) ("It is clear that a plaintiff cannot defeat a motion for summary judgment by merely restating conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover. . . . Rule 56(f) cannot be relied upon to defeat a summary judgment motion where the result of a continuance would be wholly speculative. . . ."); *Perez v. City of New York*, 01-CV-5384, 2006 U.S. Dist. LEXIS 94211, at *15 (E.D.N.Y. Dec. 29, 2006) ("[A]s explained below, most of the arguments raised by Defendants in their motion for summary judgment are purely legal or are based on undisputed facts."); *SEC v. Zubkis*, 97 Civ. 8086, 2000 U.S. Dist. LEXIS 1865, at *34-35 (S.D.N.Y. Feb. 23, 2000) ("Pursuant to Fed. R. Civ. P. 56(f), Mr. Zubkis has moved to defer consideration of the SEC's motion for partial summary judgment. . . . Mr. Zubkis, however, has failed to point to any facts that would, if found, reasonably justify his opposition to the SEC's motion for summary judgment.") (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994);

*Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir. 1985); *Jenkins v. City of New York*, 1999 U.S. Dist. LEXIS 15353, Nos. 98 Civ. 7170, 98 Civ. 7338, 1999 WL 782509, at *16-17. (S.D.N.Y. Sep. 30, 1999)). Because additional discovery regarding any of the topics listed by Poetic Products will not uncover any additional evidence relevant to the Summary Judgment Motion, the Rule 56(f) motion should be denied.

### III.  AS A MATTER OF LAW, DEFENDANT CANNOT "RESERVE ITS RIGHTS" TO SUBSTANTIVELY OPPOSE PLAINTIFF'S MOTION, AND, AS SUCH, LOST ITS OPPORTUNITY TO DO SO

Crane filed and served the Motion for Summary Judgment on November 13, 2007. (Docket Nos. 11-16.) Pursuant to the Federal and Local Rules, any Opposition to the Summary Judgment Motion must have been filed by Poetic Products on or by December 3, 2007. *See* Fed. R. Civ. P. 6; Local Civil Rule 6.1(b). On November 29, 2007, Poetic Products filed its Motion for a Stay of Crane's Summary Judgment Motion. The Motion to Stay was comprised of the Poetic Products Brief, Exhibits, and the Hoey 56(f) Declaration. (Docket Nos. 22-24.) While the Poetic Products brief contains an argument that copyright cases should not be decided on a motion for summary judgment (discussed above), no formal Opposition to Crane's Summary Judgment Motion has been filed, and Poetic Products failed to respond to Crane's Rule 56.1 Statement as required by Local Rule 56.1(c).

Poetic Products dropped a footnote in its brief stating that it "reserves all rights to oppose Plaintiff's motion for summary judgment" after discovery, and that if its 56(f) Motion is denied, "Poetic Products respectfully requests a 60-day extension of time within which it may respond to Plaintiff's motion for summary judgment." (Poetic Products Br. at 1 n.1.) Poetic Products has no right to "reserve rights" to later respond to Crane's Summary Judgment Motion instead of

defending itself now.[2]  *See, e.g.*, FRCP 56(e); *Players, Inc. v. City of New York*, 371 F. Supp. 2d 522, 534-535 (S.D.N.Y. 2005) (and cases cited therein) ("First, there is no support for its argument that a Rule 56(f) motion, no matter how frivolous, automatically stays a motion for summary judgment and entitles the party resisting summary judgment to submit additional briefing even if the Rule 56(f) motion is denied. . . . Second, Players' failure to submit any opposition to Defendants' motions at an earlier date can only be blamed on its own tactical decisions in the litigation.").  Accordingly, it has lost any further opportunity to do so.  Additionally, by failing to controvert Crane's 56.1 Statement, it has admitted all facts contained in the Statement.  *See* Local Rule 56.1(c).

## IV.   SUMMARY JUDGMENT MUST BE GRANTED IN FAVOR OF CRANE

As demonstrated fully in the Opening Brief, Crane's Motion for Summary Judgment must be granted in favor of Crane because (1) no substantial similarity exists between the works (Opening Br. at 22-28); (2) any use of *In God's Name* would be a transformative, and thus permissible, use of the book (Opening Br. at 29-30); (3) Poetic Products' allegations also fail under British law (Opening Br. at 30-32)[3]; and (4) Poetic Products' unfair competition claim is

---

[2]   Indeed, it appears from Poetic Products' arguments in the Motion to Stay and from its failure to properly oppose Crane's Summary Judgment Motion that Poetic Products' 56(f) Declaration was submitted for the improper purpose of delaying the disposition of this action, which is violative of Rule 56(g). *See, e.g., Moyna LLC v. Victoria's Secret Direct N.Y., LLC*, 01 Civ. 9625, 2003 U.S. Dist. LEXIS 14417, at *12 (S.D.N.Y. Aug. 19, 2003) ("In accordance with 56(g), any attempt to have this motion delayed pending future discovery, is denied.").

[3]   In the same footnote where it improperly "reserves its rights" to respond to the Summary Judgment Motion, Poetic Products asserts without legal authority that a U.S. Court lacks authority to decide UK copyright-infringement claims.  As fully discussed in the Opening Brief, this Court has full authority to decide the UK claims that have been placed before it. *See, e.g., Carell v. Shubert Org.*, 104 F. Supp. 2d 236, 2559 (S.D.N.Y. 2000) ("[T]here is no reason to believe that the Court would be foreclosed from applying foreign law to plaintiff's foreign infringement claims.") (and cases cited therein); *Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 637-38 (S.D.N.Y. 2000) ("In the present case, this Court would unquestionably have subject matter jurisdiction over any claims properly arising under United States copyright law, potentially allowing the Court to exercise pendent jurisdiction over claims arising under foreign law.  Moreover, there would appear to be complete diversity as among the parties to this action."); *Bridgeman Art Library v. Corel Corp.*, 25 F. Supp. 2d 421, 427 (S.D.N.Y. 1998); Opening Br. at 31.

preempted by the Copyright Act.  (Opening Br. at 32-33.)  Poetic Products has failed to respond to any of these arguments.  For the reasons discussed both above and in the Opening Brief, Crane's Motion for Summary Judgment should be granted.

## CONCLUSION

In light of the foregoing, Plaintiff Roger R. Crane, Jr. respectfully requests that this Court (1) grant Crane's Summary Judgment Motion and declare that Crane's *The Last Confession* does not infringe *In God's Name* under U.S. and U.K. law, and (2) deny Poetic Products' Motion to Stay.

Dated: January 4, 2008
       New York, New York

**NIXON PEABODY LLP**

By: ___/s/ Frank Penski_____
     Frank H. Penski (FP-9221)
     Tamar Y. Duvdevani (TD-7603)

437 Madison Avenue
New York, New York 10022
Telephone:  (212) 940-3000