UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROGER R. CRANE, JR, <br><br> Plaintiff, <br><br> - vs - <br><br> POETIC PRODUCTS LIMITED, <br><br> Defendant, <br> ——————————————— <br> POETIC PRODUCTS LIMITED, <br><br> Counterclaimant, <br><br> - vs - <br><br> ROGER R. CRANE, JR, <br><br> Counterclaim Defendant, | Case No. 07 Civ. 7063 (BSJ) <br> (FM) <br> **DECLARATION OF ROBERT** <br> **MICHAEL ENGLEHART QC** |

I, Robert Michael Englehart QC declare under penalty of perjury that the following is true and correct:

## INTRODUCTION

1. I have a degree in jurisprudence from Oxford University and also hold a LL.M. from Harvard Law School in the United States. Since 1970 I have been in practice as a barrister at the Bar of England and Wales. I was appointed Queen's Counsel in 1986. Since 1992 I have also been sitting as a deputy High Court Judge in the Chancery Division. One of the areas in which I practise is the English law of copyright. I believe I am well qualified to explain certain general principles of the English law of copyright as they may be material to the litigation currently pending in the United States District Court for the Southern District of New York between Mr Crane and Poetic Products Limited. I am, of course, not qualified to express any view on United States copyright law.

## PRELIMINARY

2. I have been shown a copy of a Memorandum of Law ("the Memorandum") dated 13 November 2007 apparently filed by Mr Crane's lawyers and purporting to describe principles of English copyright law material to the litigation in question. I cannot, of course, comment upon the accuracy of the Memorandum's submissions on United States law. However, I have to say that the Memorandum appears to proceed on the basis of some fundamental misconceptions about the English law of copyright. It appears that this may perhaps be due to:

    (i) too ready an assumption that American and English copyright law are the same in all respects whereas it has been pointed out in the English courts that there may be some real differences, particularly in relation to the concept of ideas not being protected by copyright; and

(ii) undue reliance on the judgment at first instance of Peter Smith J in *Baigent v Random House* [2006] FSR 44 whereas (although the conclusion was upheld on the facts) that judgment was heavily criticised by the Court of Appeal [2007] FSR 24.

**PRELIMINARY STATEMENT**

3. I refer to the second paragraph of the Memorandum's Preliminary Statement.

4. First, as a very broad, and in many ways not very helpful, proposition it is true to say that the English law of copyright protects the expression of an idea rather than a bare idea as such. But, as Lord Hailsham noted in *LB (Plastics) Ltd v Swish Products Ltd* [1979] FSR 145 at 160:

> But, of course, as the late Professor Joad used to observe, it all depends on what you mean by "ideas". What the respondents in fact copied from the appellants was no mere general idea.

In this context it seems to me that there may possibly be significant differences between the approach of English law and that of American law, at least if the Memorandum does accurately state American law. In *Ibcos Computers Ltd v Barclays Finance Ltd* [1994] FSR 275 Jacob J expressed the position as follows:

> The true position is that where an "idea" is sufficiently general, then even if an original work embodies it, the mere taking of that idea will not infringe. But if the "idea" is detailed, then there may be infringement. It is a question of degree. The same applies whether the work is functional or not, and whether visual or literary. In the latter field the taking of a plot (i.e. the "idea") can certainly infringe – if that plot is a substantial part of the copyright work.

In this context Jacob J drew attention to significant differences between English and American law. He continued at page 301:

> The problem may be bedeviled by the "no copyright in an idea" argument – along the lines of the United States Code, s. 102(b). As I have indicated that has no relevance in

> United Kingdom law once one goes beyond a mere general idea.
>
> ………
>
> For myself I do not find the route of going via United States case law particularly helpful. As I have said, United Kingdom copyright cannot prevent the copying of a mere general idea but can protect the copying of a detailed "idea". It is a question of degree where a good guide is the notion of overborrowing of the skill, labour and judgment which went into the copyright work.

5. Second, it seems to me that the penultimate and last sentences of the second paragraph of the Memorandum's Preliminary Statement reveal a fundamentally misconceived approach, at least as far as the English law of copyright is concerned. It is an approach which the Court of Appeal so heavily criticised in the *Baigent* case when considering the first instance judgment of Peter Smith J in the High Court. Whilst facts are not themselves copyright works, it is certainly the case that the law of copyright will protect an author's collection, arrangement, treatment and description of facts. There is absolutely no doubt that factually historical, let alone theoretically historical, works of an author do enjoy copyright protection. A third person will infringe the copyright if he takes a substantial part of the author's treatment irrespective of the fact that the work is addressing actual or assumed historical events. There are numerous instances of copyright infringement claims being upheld in the English courts where the copied work was a historical or quasi-historical work.

**COPYRIGHT INFRINGEMENT UNDER ENGLISH LAW**

6. The current governing statute under English law is the Copyright Designs and Patents Act 1988. To a large extent this Act reproduces concepts which have been familiar to English copyright lawyers for many years: cf. paragraph 3 of Schedule 1 of the Act. Nevertheless, it is to the sections of this Act to which

4

one must now have regard. Essentially, with a claim for primary infringement by copying English law asks the following questions:

    (1) Does copyright subsist in the Claimant's work?

    (2) If so, does the allegedly infringing work reproduce a substantial part of the Claimant's work, substantiality in this context being judged by reference to the quality, not just the quantity, of what is reproduced?

    (3) If so, is there a causal connection, i.e. did the Defendant actually copy (consciously or subconsciously) the Claimant's work?

### SUBSISTENCE OF COPYRIGHT

7. I do not believe there can be any, or at least any genuine, dispute but that under English law copyright does indeed subsist in the literary work "In God's Name". The work was apparently published prior to the entry into force of the 1988 Act so that under Schedule 1, paragraph 5, one must have regard to the Copyright Act 1956. However, the 1988 Act introduced no material change. Copyright subsists in original literary works. For this purpose, "original" does not refer to creative originality. It simply means that the work must originate from the author, i.e. must not be simply a slavish copy of another work. I will not further address the question of copyright subsistence since there seems to be no issue about it in the current litigation.

### INFRINGEMENT

8. As will be apparent, there are two elements to the question of infringement - an objective one and a subjective one. It would be inappropriate for me to address the latter subjective element in relation to the present litigation since it is essentially a matter of factual evidence. An inference of copying will arise if

the Defendant's work does reproduce a substantial part of the Claimant's copyright work and the Defendant had access to that work. However, a Defendant may be able to rebut such inference if he can satisfy the Court by evidence that he did not in fact copy, for example that the similarities are coincidental or due to his having consulted a common source. In the latter context, it is to be stressed that it is no answer for a Defendant to say that he could have obtained material from elsewhere if he in fact obtained it from the Claimant's work.

9. There are for present purposes essentially two copyright rights, the copying right and the adaptation right, which are at the heart of the present dispute. Section 16 of the 1988 Act provides *inter alia*:

> (1) The owner of the copyright in a work has, in accordance with the following provisions of this Chapter, the exclusive right to do the following acts in the United Kingdom--
> (a) to copy the work (see section 17)
> .......
> (c) to perform ... the work in public (see section 19);
> .......
> (e) to make an adaptation of the work .... (see section 21);
> and those acts are referred to in this Part as the "acts restricted by the copyright".
>
> (2) Copyright in a work is infringed by a person who without the licence of the copyright owner does, or authorises another to do, any of the acts restricted by the copyright.
>
> (3) References in this Part to the doing of an act restricted by the copyright are to the doing of it --
> (a) in relation to the work as a whole or any substantial part of it, and
> (b) either directly or indirectly;
> ......

10. Under section 17(2) of the 1988 Act:

> Copying in relation to a literary, dramatic, musical or artistic work means reproducing the work in any material form.

Under section 19(1) of the Act:

> The performance of the work in public is an act restricted by the copyright in a literary....work

Under section 21 of the 1988 Act:

> (2) The doing of any of the acts specified in sections 17 to 20 ...in relation to an adaptation of the work is also an act restricted by the copyright in a literary....work
>
> (3) In this Part "adaptation"
> (a) in relation to a literary work, other than a computer program or a database, or in relation to a dramatic work, means --
> .....
> (ii) a version of a dramatic work in which it is converted into a non-dramatic work or, as the case may be, of a non-dramatic work in which it is converted into a dramatic work;

11. "In God's Name" is, of course, a book whereas "The Last Confession" is a play. Obviously, a dramatic work will be different in form from a literary work. But the critical question to address will be whether "The Last Confession" reproduces a substantial part of "In God's Name". In this connection reference may be made to paragraphs 7-34, 7-35 and 7-122 to 7-124 of Copinger and Skone James on Copyright (15th ed) for a convenient summary of the relevant principles[1]. True and correct copies of these extracts are annexed to this declaration as Exhibit A.

---

[1] This work is one of the two leading English textbooks. The work cited in the Memorandum, Geller and Melville B Nimmer, would not be considered authoritative on English copyright law by an English court.

12. As indicated above, the fact that a work may be a historical or factual work or a work of research does not mean that others may simply take for themselves the product of the author's own researches and expression. The approach of English law - in the context of a book being used for a film - is exemplified by the case of *Harman Pictures v Osborne* [1967] 1 WLR 723. The case concerned a film of a historical event, the Charge of the Light Brigade, which was alleged to have been based on a book about that event called The Reason Why. Goff J in that case was dealing with an interlocutory application and in doing so had to address, and in fact rejected, arguments not dissimilar to those now being advanced in the Memorandum. A true and correct copy of the full report of the decision is annexed to this declaration as Exhibit B, but attention is drawn to the following passages in the judgment:

> But there is a distinction between ideas (which are not copyright) and situations and incidents which may be: see *per* Swinfen Eady LJ in Rees v Melville: " In order to constitute an infringement it was not necessary that the words of the dialogue should be the same, the situations and incidents, the mode in which the ideas were worked out and presented might constitute a material portion of the whole play, and the court must have regard to the dramatic value and importance and what if anything was taken, even although the portion might in fact be small and the actual language not copied. On the other hand, the fundamental idea of two plays might be the same, but if worked out separately and on independent lines they might be so different as to bear no real resemblance to one another (page 728)

> "But another person may originate another work in the same general form, provided he does so from his own resources and makes the work he so originates a work of his own by his own labour and industry bestowed upon it. In determining whether an injunction should be ordered, the question, where the matter of the plaintiff's work is not original, is how far an unfair or undue use has been made of the work. If, instead of searching into the common sources and obtaining your subject matter from thence, you avail yourself of the labour of your predecessor, adopt his arrangement and questions, or adopt them with a colourable variation, it is an illegitimate use."
> (page 730)

8

> I should also refer, I think, to Macmillan & Co Ltd v Cooper in the Privy Council, where Lord Atkinson, in delivering the judgment of the board, quoted with approval - and as having been approved by the Court of Appeal in Moffat and Page Ltd v Gill - the following passage from the judgment of Sir Arthur Wilson in an earlier Indian case:
> " In the case of works not original in the proper sense of the term, but composed of, or compiled or prepared from materials which are open to all, the fact that one man has produced such a work does not take away from anyone else the right to produce another work of the same kind, and in doing so to use all the materials open to him. But, as the law is concisely stated by Hall V-C in Hogg v Scott "the true principle in all these cases is that the defendant is not at liberty to use or avail himself of the labour which the plaintiff has been at for the purpose of producing his work, that is, in fact, merely to take away the result of another man's labour or, in other words, his property."
> .....
> So in the instance mentioned by Sir Samuel Romilly, a work consisting of a selection from various authors, two men might perhaps make the same selection; but that must be by resorting to the original authors, not by taking advantage of the selection already made by another.
> (page 732).

13. Another authority in point is *Ravenscroft v Herbert* [1980] RPC 193 where Brightman J was concerned with a case where the Plaintiff's work was a research work called The Spear of Destiny. The First Defendant wrote a novel called The Spear. Both works dealt with the same topic, i.e. the history of a notorious spear. Brightman J found that there had been infringement. As the headnote puts it:

> In writing the prologues for his work, the first defendant had copied the plaintiff work to a substantial extent; there was much language copying; there were the same characters, incidents, and interpretation of the significance of events in both the plaintiff's and the first defendant's works.

A true and correct copy of the full report of the decision is annexed to this declaration as Exhibit C. As the Judge pointed out at page 204:

> Copyright protects the skill and labour employed by the plaintiff in production of his work. That skill and labour embraces not only language originated and used by the plaintiff, but also such skill and labour as he has employed

9

in selection and compilation. The principles are clear from the cases. There is a helpful summary of the authorities in Harman Pictures NV v Osborne [1967] 1 WLR 723.

**BAIGENT v RANDOM HOUSE**

14. In their Memorandum Mr Crane's lawyers draw heavily in support of their arguments on the first instance judgment of Peter Smith J in *Baigent v Random House* [2006] FSR 44. The actual result was, as the Memorandum records, affirmed on appeal. But in affirming the decision the Court of Appeal made severe criticism of the judgment of Peter Smith J. "The judgment is not easy to read or understand. It might have been preferable for [the Judge] to have allowed himself more time for the preparation, checking and revision of the judgment": Lloyd LJ at [4]. Mummery LJ, an acknowledged expert in the field of copyright and formerly editor of one of the main textbooks on the subject, put it thus:

> 109 I add general comments on several aspects of copyright law and litigation arising from points made in and on the judgment of Peter Smith J. Although I agree with his decision, I do not agree with some parts of his judgment and it is necessary to say something about the formulation and treatment of the issues and the presentation of conclusions in cases of this kind.
> .....
> 114 Unfortunately, the judgment, which is very long and complicated, provided both sides with ammunition for their arguments that the judge reached conclusions in their favour on the threshold issue of copying. The particular paragraphs cited from his judgment indicated that there was a degree of confusion and possible self-contradiction and misdirection in the fact finding process.
>
> 115 It is fair to say that, if the judgment had presented the findings, together with supporting reasoning, in better order and with greater clarity, the scope for the parties to engage in these arguments would have been reduced.

A correct description of the applicable principles of English copyright law material to literary works cannot be given by reference to the first instance judgment of Peter Smith J. Only the judgments of the Court of Appeal,

particularly that of Mummery, LJ, can be considered as authoritative. A true and correct copy of the full report of the Court of Appeal decision is annexed to this declaration as Exhibit D.

15. The judgment of Mummery LJ repays careful consideration, for he discusses matters of general principle applicable to any copyright case. Whilst the full judgment should be read, it may be useful to draw attention to certain passages in the judgment in the light of the way Mr Crane's lawyers present the case in the Memorandum. At paragraphs 127 - 139 Mummery LJ was concerned to dispel the theory that one should dissect each part of the copyright work for the purposes of testing infringement. He emphasised:

> 127 There is some confusion in this case both in the judgment and in the defendant's submissions between the subsistence of copyright (what is the copyright work?) and its infringement (has a substantial part of the copyright work been copied?). Under the 1988 Act subsistence and infringement are distinct issues.
> ....
> 131 As Lord Reid observed in Ladbroke (Football) Ltd v William Hill (Football) Ltd [1964] 1 WLR 273 at 277, you can reach a wrong result in a copyright case by dividing up the original copyright work into separate parts and then asking whether the separate parts standing on their own could be the subject of copyright. In my judgment, this criticism of the destructive dissection of the original copyright work is as valid when considering the issue of infringement as it is when considering the issue of subsistence of copyright discussed by Lord Reid in that part of his opinion.
>
> 132 The point is so fundamental to the proper conduct of copyright litigation that it needs to be spelled out. On the issue of subsistence it is wrong to divide up the whole copyright work into parts and destroy the copyright in the whole work by concluding that there is no copyright in the individual segments. Similarly, on the issue of infringement, it is wrong to take the parts of the original copyright work that have been copied in the alleged infringing work, to isolate them from the whole original copyright work and then to conclude that "a substantial part" of the original copyright work has not been copied because there was no copyright in the copied parts on their

> own.
> ....
> 135 I emphasise this point because the judge's statement (in [259] of his judgment) that "... the Central Theme as expressed is not such as to justify being protected against copying" tends to blur the distinct issues of subsistence and infringement.

16. In consideration of what is meant by copying in the case of a literary work Mummery LJ continued at [141]:

> The essence of literary copyright is proprietary protection (in the form of exclusive rights to do acts restricted by the copyright in the work) for a literary work in recognition of the investment of effort, time and skill in reducing it into material form, such as words, signs and symbols. Although there is no objection to calling word for word copying "language copying", it is, in my view, potentially confusing to describe it as "textual copying" and it is better to avoid the use of that expression. The "text" of a literary work may cover more than the particular words in which it is expressed and extend to its overall content, including the selection, arrangement and development of ideas, theories, information, facts, incidents, characters, narrative and so on.

Of course, the *Baigent* case was one where there had been virtually negligible "language copying" whether literally or colourably. To that extent, a least, it was certainly a less strong case than what is alleged in relation to "The Last Confession" and "In God's Name".

17. As for what may be "a substantial part", Mummery LJ observed:

> 144 The 1988 Act does not define "a substantial part" or even indicate what factors are relevant to substantiality. I do not think that there is any real point in asking: what does "a substantial part" mean? That sort of question is only a path to a dictionary and to the dubious substitution or addition of other words which do not help to answer the crucial question of fact: is [the defendant's work] a copy of "a substantial part" of [the claimant's work]?
>
> 145 It is more sensible to ask whether there exist in this case the necessary and sufficient conditions for characterising the

parts copied from the original work as "a substantial part" of the original work. The decided cases help in identifying the relevant necessary and sufficient conditions for substantiality. Thus, it is not necessary for the actual language of the copyright work to be copied or even for similar words to be used tracking, like the translation, the language of the copyright work. It is sufficient to establish that there has been substantial copying of the original collection, selection, arrangement, and structure of literary material, even of material that is not in itself the subject of copyright.

### THE SUMMARY JUDGMENT APPLICATION

18. I have seen copies of the schedules for Act 1 and Act 2 submitted by the English solicitors for Poetic Products Limited and exhibited to Mr Crane's declaration. The schedules demonstrate a remarkable similarity of language between In God's Name and The Last Confession in a considerable number of passages. Moreover, the similarities are not only in wording. There is evidently a close proximity not only between the general underlying thesis of the two works but also between the detailed way in which the thesis is worked out and portrayed. It is also apparently not in dispute but that Mr Crane had access to, and did read, In God's Name before writing The Last Confession: see his English solicitors' letter of 9 November 2007 exhibited to Mr Crane's declaration. As I have mentioned, at least under English law it would be no answer to say that all the points of similarity concern matters of fact, or would have been available from other sources, if in truth Mr Crane used In God's Name as his source.

19. Of course, it is not for me to make judgments about matters of fact. Nevertheless, I have to say that to an English lawyer the concept of summary judgment without a trial in a copyright action like the present one does seem strange. I would think it odd if Poetic Products Limited were to seek summary

judgment for copyright infringement merely on account of the evident similarities between the two works. But, given those similarities coupled with admitted access to In God's name, summary judgment for a negative declaration of liability without trial seems even more odd. As Mummery LJ said in *Baigent* at [22]:

> .... in cases in which the issue of copying has to be decided on disputed evidence the court should be guided by the sound legal principle that proof of similarity between the alleged infringing work and the original copyright work, coupled with proof of direct or indirect access to the original, is prima facie evidence of copying for the defendant to answer: Francis, Day & Hunter Ltd v Bron [1963] Ch 587 at 612 per Wilberforce J (a wise judgment, which does not seem to have been cited to the judge)

Having said that, I can naturally only look at the case from the standpoint of English law. I readily acknowledge that matters of United States law are not for me.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury the foregoing is true and correct.

Executed on this 6th day of May 2008

*[signature]*

6 May 2008                                    ROBERT ENGLEHART QC

                                              Blackstone Chambers