UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROGER R. CRANE, JR,

Plaintiff,

- vs -

POETIC PRODUCTS LIMITED,

Defendant.

-----------------------------------------------------------------

POETIC PRODUCTS LIMITED,

Counterclaimant,

- vs -

ROGER R. CRANE, JR,

Counterclaim Defendant.

**Case No. 07 Civ. 7063 (BSJ) (FM)**

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NIXON PEABODY LLP
Attorneys for Plaintiff
437 Madison Avenue
New York, New York 10022

Of Counsel:
Frank H. Penski
Tamar Y. Duvdevani

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

I.    NO SUBSTANTIAL SIMILARITY OF PROTECTIBLE ELEMENTS EXISTS
      BETWEEN THE LAST CONFESSION AND IN GOD'S NAME ................................... 3

   A.   Poetic Products' Case Law Lends it No Support............................................... 4

   B.   Poetic Products' Comparison of *The Last Confession* and *In God's Name* is Flawed ....... 8

II.   ANY USE BY CRANE OF *IN GOD'S NAME* CONSTITUTES FAIR USE.................. 12

III.  POETIC PRODUCTS' UK ALLEGATIONS ARE AT ISSUE AND FAIL UNDER UK
      LAW ...................................................................................................... 13

IV.   POETIC PRODUCTS' SECOND COUNTERCLAIM IS PREEMPTED BY FEDERAL
      LAW ...................................................................................................... 18

CONCLUSION........................................................................................................ 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROGER R. CRANE, JR,

                                        Plaintiff,

        - vs -

POETIC PRODUCTS LIMITED,

                                        Defendant.

------------------------------------------------------------

POETIC PRODUCTS LIMITED,

                                        Counterclaimant,

        - vs -

ROGER R. CRANE, JR,

                                        Counterclaim Defendant.

**Case No. 07 Civ. 7063 (BSJ) (FM)**

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

In the Opening Brief, Crane demonstrated that the Motion for Summary Judgment should

be granted on Crane's declaratory judgment claim and that Poetic Products' counterclaims

should be dismissed because (1) no substantial similarity exists between *The Last Confession* and

*In God's Name* (Opening Br. at 22-28); (2) any use of *In God's Name* would be a permissible

use (Opening Br. at 29-30); (3) Poetic Products' allegations fail under British law (Opening Br.

at 30-32); and (4) Poetic Products' unfair competition claim is preempted by the Copyright Act.

(Opening Br. at 32-33).  Poetic Products did not initially oppose Crane's Motion, but instead

made a motion to stay the Motion for Summary Judgment. (Dkt. No. 22.) On April 23, 2008, Judge Frank Maas denied Poetic Products' motion to stay. *See Crane v. Poetic Prods.*, 07 Civ. 7063, 2008 U.S. Dist. LEXIS 34070 (S.D.N.Y. Apr. 23, 2008). Additionally, Judge Maas (1) found that British copyright law is similar to United States copyright law, citing *Bridgman Art Library v. Corel Corp.*, 25 F. Supp. 2d 421, 427 n. 41 (S.D.N.Y. 1998); (2) acknowledged that Poetic Products' second counterclaim appears to be preempted by federal law; and (3) held that Poetic Products had been required under Local Civil Rule 6.1(b) to submit any opposition to Crane's Summary Judgment Motion within ten days after service of Crane's moving papers. *See Crane v. Poetic Prods.*, 2008 U.S. Dist. LEXIS 34070 at *9-11. Judge Maas did, however, grant Poetic Products an additional opportunity to oppose Crane's motion, which it took on May 7, 2008. *See id.* at *12. That opposition utterly fails to present any legal or factual arguments that would counsel against the granting of Crane's motion.

In wholly conclusory fashion, Poetic Products argues that (1) Crane's *The Last Confession* infringes upon the protectible elements of Yallop's *In God's Name*; (2) any use by Crane of *In God's Name* is not a fair use; and (3) claims regarding UK copyright law are not at issue but if they are, they favor *Poetic Products*. (Opposition Br. at 8-23.) These arguments fail because they are unsupported by the underlying facts and because they rely upon case law that is either misconstrued or not relevant to this action. Further, Poetic Products fails to recognize that Crane moved for summary judgment on both Poetic Products' counterclaims as well as its own declaratory judgment claim, which put the UK copyright allegations squarely at issue. Finally, Poetic Products is silent regarding its unfair competition claim, tacitly acknowledging that it is preempted by the Copyright Act. For all of the reasons discussed in the Opening Brief, summary judgment should be granted in favor of Crane.

## I.    NO SUBSTANTIAL SIMILARITY OF PROTECTIBLE ELEMENTS EXISTS BETWEEN THE LAST CONFESSION AND IN GOD'S NAME

"The test for 'substantial similarity' is 'whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Brown v. Perdue*, 04 Civ. 7417, 2005 U.S. Dist. LEXIS 15995, at *16 (S.D.N.Y. Aug. 4, 2005), *aff'd*, 177 Fed. Appx. 121, 2006 U.S. App. LEXIS 13877 (2d Cir.); *cert denied*, 127 S. Ct. 580 (2006) (quoting *Warner Bros. Inc. v. American Broadcasting Companies*, 654 F.2d 204, 208 (2d Cir.1981)). "If the similarity concerns only noncopyrightable elements of a work, or no reasonable trier of fact could find the works substantially similar, summary judgment is appropriate." *Id.* (emphasis added) (citing *Walker v. Time Life Films*, 784 F.2d 44, 48 (2d Cir. 1986)).

In *Brown v. Perdue*, a recent case directly on point, plaintiff Dan Brown, author of *The Da Vinci Code*, brought a declaratory judgment action that his work did not infringe defendant Lewis Perdue's books *Daughter of God* and *The Da Vinci Legacy*. Prior to any discovery, plaintiff filed a motion for judgment on the pleadings, or in the alternative, for summary judgment. Judge Daniels granted summary judgment to Mr. Brown, finding no substantial similarity of protectible elements between the two works:

> All of [the] similarities . . . are unprotectible ideas, historical facts and general themes that do not represent any original elements of Perdue's work. For example, although both novels discuss Emperor Constantine and the Council of Nicea, it is without question that references to historical figures and events constitute unprotectible elements under the copyright laws, as 'no claim of copyright protection can arise from the fact that plaintiff has written about such historical and factual items.' . . . Also, copyright protection does not extend to thematic concepts or scenes which must necessarily follow from similar plot situations.

*Id.* at *23-24 (internal citations omitted). Crane's case is even stronger than Mr. Brown's. There, the two works at issue were both mystery thrillers. *See id.* at *23. Here, Crane's work is a two act dramatic play composed of fictional dialogue and based upon a historical event (the ascension and death of pope John Paul I) that has the

overriding theme of Cardinal Benelli's guilt over Luciani's death, while Yallop's work is

an in-depth historical analysis (replete with photographs and source information) of the

Vatican in the mid to late 20th century, theorizing that Pope John Paul I was murdered

due to political and mafia-related conspiracies. (*See* Opening Br. at 2-10.) A review of

both works and the applicable case law unequivocally proves that no substantial

similarity exists between the works, barring any claim of copyright infringement. *See,*

*e.g., Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 681 (2d Cir. 1998); *see*

*also* Opening Br. at 22-28.

     A.     <u>Poetic Products' Case Law Lends It No Support</u>

     In its opposition, Poetic Products does not even attempt to distinguish *Brown v.*

*Purdue* from this action, but instead cites a number of cases that are factually distinct,

hail from other Circuits, or actually support Crane's position.

     Poetic Products first cites to *Hoehling v. Universal City Studios, Inc.*, 618 F. 2d 972 (2d

Cir.), *cert. denied*, 449 U.S. 841 (1980), and quoted the court's opinion that "[b]ecause

substantial similarity is customarily an extremely close question of fact, summary judgment has

traditionally been frowned upon in copyright litigation." *Id.* at 976 (citation omitted) (Poetic

Products Br. at 6.). The Court, however, did not stop its analysis where Poetic Products stopped

the quotation:

     Because substantial similarity is customarily an extremely close question of fact,
     summary judgment has traditionally been frowned upon in copyright litigation.
     <u>Nevertheless, while [*Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946)]'s</u>
     <u>influence in other areas of the law has been diminished, a series of copyright</u>
     <u>cases in the Southern District of New York have granted defendants summary</u>
     <u>judgment when all alleged similarity related to non -copyrightable elements of the</u>
     <u>plaintiff's work. These cases signal an important development in the law of</u>
     <u>copyright, permitting courts to put 'a swift end to meritless litigation' and to avoid</u>
     <u>lengthy and costly trials. Drawing on these cases, Judge Metzner assumed both</u>
     <u>copying and substantial similarity, but concluded that all similarities pertained to</u>
     <u>various categories of non-copyrightable material. Accordingly, he granted</u>

appellees' motion for summary judgment. We affirm the judgment of the district court.

*Id.* (internal citations omitted) (emphasis added). The Court of Appeals affirmed the grant of summary judgment because all similarities between the works were of unprotectible elements. *See id.* at 980.

*Hoehling* concerned two works, one factual, one slightly more literary, that recounted the introduction, last voyage, and tragic destruction of the Hindenburg zeppelin, the "colossal dirigible constructed in Germany during Hitler's reign." *Id.* at 974-75. Michael MacDonald Mooney, the author of the later work and appellee, acknowledged that he consulted appellant A.A. Hoehling's book, and that he relied on it for some details. *See id.* at 976. Hoehling instituted an action against Mooney and Universal City Studios (who made a motion picture out of a screenplay adaptation of Mooney's book). *See id.* Appellees moved for summary judgment against Hoehling, arguing that, like Crane here, no substantial similarity of protectible elements existed between the works. *See id.* at 977. Also like here, the parties did not dispute that the non-moving party held a valid copyright for his work, nor did they dispute that the moving party had access to that work. *See id.* at 977.

Affirming the grant of summary judgment, the Court explained that non-copyrightable elements are not subject to protection, and that "an interpretation of an historical event" is "not copyrightable as a matter of law." *Id.* at 978. Specifically, the Court explained that the Second Circuit "has permitted extensive reliance on prior works of history." *Id.* at 978 n.5 (citing *Gardner v. Nizer*, 391 F. Supp. 940 (S.D.N.Y.1975) (the story of the Rosenberg trial not copyrightable) (emphasis added); *Fuld v. National Broadcasting Co.*, 390 F. Supp. 877 (S.D.N.Y.1975) ("Bugsy" Siegel's life story not copyrightable); *Greenbie v. Noble*, 151 F. Supp. 45 (S.D.N.Y.1957) (the life of Anna Carroll, a member of Lincoln's cabinet, not copyrightable)).

"To avoid a chilling effect on authors who contemplate tackling an historical issue or event, broad latitude must be granted to subsequent authors who make use of historical subject matter, including theories or plots." *Hoehling*, 618 F.2d at 978 (emphasis added). As such, thematic or plot-driven similarities, if any, between *The Last Confession* and *In God's Name* are not actionable as a matter of law.

   *Hoehling* additionally stands for the proposition discussed in the Opening Brief that facts are not subject to copyright protection. *See id.* ("The same reasoning governs Hoehling's claim that a number of specific facts, ascertained through his personal research, were copied by appellees. The cases in this circuit, however, make clear that factual information is in the public domain.") "Each appellee had the right to avail himself of the facts contained in Hoehling's book and to use such information, whether correct or incorrect, in his own literary work." *Id.* (internal quotation marks omitted.) Accordingly, the facts that are contained in *In God's Name* are unprotectible.

   Of final relevance to the instant matter is the *Hoehling* ruling that scenes a faire, including, for example, the historical characters, places, and quotations surrounding the real-life Pope John Paul I, are "not copyrightable as a matter of law." *Id.* at 979-80. In *Hoehling*, these similarities amounted to such things as "a scene in a German beer hall, in which the airship's crew engages in revelry prior to the voyage," "common German greetings of the period, such as 'Heil Hitler,' or songs, such as the German National anthem." *Id.* at 979. "These elements . . . are merely scenes a faire, that is, 'incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic.' Because it is virtually impossible to write about a particular historical era or fictional theme without employing certain 'stock' or standard

literary devices, we have held that scenes a faire are not copyrightable as a matter of law." *Id.* (internal citations omitted). Likewise, it would have been impossible for Crane to author a play involving Pope John Paul I and his Vatican without employing many of the same incidents, characters or settings also used by David Yallop in *In God's Name*.[1]

The only case that Poetic Product discusses in any detail regarding substantial similarity is *Burgess v. Chase-Riboud*, 765 F. Supp. 233 (E.D. Pa. 1991), stating that its facts "nearly mirror those in the present case." (Poetic Product's Br. at 9.) Putting aside Poetic Products' obvious need to reach to the Eastern District of Pennsylvania despite a wealth of similar cases in the Second Circuit (*see, e.g., Brown v. Purdue* or *Hoehling* for two obvious examples), it fails to educate this Court about the very striking difference between *Burgess* and this action, namely, that both of the works at issue there were fictional, and it was those shared fictional elements that afforded a victory to the copyright holder. The works at issue in *Burgess* were both fictional novels about Sally Hemings, Thomas Jefferson's mistress. *See id.* at 233-34. Burgess's primary argument that he did not infringe on Chase-Riboud's book was that the Sally Hemings story is a matter of historical record. *See id.* However, in ruling against Burgess, the court noted: "The first thing that is readily apparent in this dispute is the sheer number of similarities in the <u>fictional details</u> of Dusky Sally and Sally Hemings. Many of these similarities cannot be traced to any historical account. . . ." *Id.* at 239 (emphasis added). A review of Exhibit 3 to the Duvdevani Declaration demonstrates that nearly all of the alleged similarities between *In God's Name* and *The Last Confession* are facts that are contained

---

[1]    Poetic Products attempts, again in conclusory fashion, to distinguish *Hoehling* by arguing that Crane "bodily appropriates" *In God's Name*. (Poetic Products Br. at 10 n.5.) A review of the two works and the facts of the *Hoehling* case easily refute this assertion.

in various other sources.   Moreover, the very fact that Yallop holds his work out as

factual (indeed, it is his very point in writing the book) distinguishes *Burgess* and

mandates dismissal of Poetic Products' claims. *See Arica Inst., Inc. v. Palmer*, 970 F.2d

1067, 1074-75 (2d Cir. 1992) ("[T]he first person to find and report a particular fact has

not created the fact; he or she has merely discovered its existence.' Thus, 'facts, whether

alone or as part of a compilation, are not original and therefore may not be

copyrighted.'"). The *Burgess* court concluded that infringement had occurred because

Chase-Riboud "paint[ed] an almost wholly-imagined life for Sally Hemings, filled with

imagined scenes, thoughts and relationships. . . An alarming number of these same

creative inventions appear in Dusky Sally." *Id.* at 243. As a result, the *Burgess* case is

clearly distinguishable and lends no persuasive support to Poetic Products.

In sum, Poetic Products' legal citations do nothing to promote its position, and

instead provides strong support for Crane's motion because, like the works in *Hoehling*,

*The Last Confession* and *In God's Name* share only non-copyrightable elements, *Burgess*

is distinguishable, and its remaining cases are cited for general propositions. (*See* Poetic

Products' Br. at 8-15.)

B.    Poetic Products' Comparison of *The Last Confession* and *In God's Name* is
      Flawed

Poetic Products' brief is replete with conclusory statements that *The Last

Confession* takes *In God's Name's* protectible expression.[2]  Its one section that attempts

---

[2]    The references to Mr. Yallop's "comparison charts" are unavailing in this regard.  Those charts demonstrate that the bits and pieces of *In God's Name* that are allegedly stolen by Crane are comprised <u>wholly</u> of unprotectible elements, and a review of the works themselves demonstrate that the selection and arrangement, theme and tone of the works are remarkably different.

to compare what it ostensibly deems the best examples of infringement demonstrates why it shies away from supporting its conclusory statements with more facts.

Poetic Products asserts that *The Last Confession* and *In God's Name* share the same "three main figures" – Pope John Paul I, Bishop Marcinkus, and Cardinal Villot. (Poetic Products' Br. at 13-14.) Yet there is no doubt when reading *The Last Confession* that the play fully revolves around Cardinal Giovanni Benelli. He is the lead character, he was played by David Suchet, the star of the English production, and he is listed first in the cast of characters (which is not in order of appearance). (*See* Yallop Decl. Ex. 3; *The Last Confession* at 5.) Poetic Products attempts to argue around this obvious truth by stating that Benelli is only a "key character," and not the lead character, in *The Last Confession*, and also "appears on 56 pages" of *In God's Name*. (poetic Products' Br. at 14.) If this exercise proves anything with regard to the instant copyright claims, it is Crane's point: Benelli has dialogue on 84 pages (out of 102 pages) of *The Last Confession*, which is 82% of the play, and is on stage for the play's entirety. (*See generally The Last Confession*.) According to Yallop, Benelli is mentioned on 56 pages of *In God's Name*; that is, 56 out of 343 pages, or 16% of the book. Of course, any mention of any of the same "characters" found in *In God's Name* proves nothing – as discussed above and in the Opening Brief, it would be nearly impossible to write a story about Pope John Paul I's reign without them. *See, e.g., Brown*, 2005 U.S. Dist. LEXIS 15995, at *18 ("*[S]cenes a faire*, sequences of events that necessarily result from the choice of setting or situation, do not enjoy copyright protection.") (citing *Williams v. Crichton*, 84 F.3d at 587).

Poetic Products also attempts to downplay the role of the Confessor, another main character in *The Last Confession* (with second billing after Benelli), whose multiple scenes with Benelli are all fictional creations of Crane. (*See generally The Last Confession*.) Further, Poetic Products omits the fact that *In God's Name* mentions hundreds of "characters" (i.e., historical figures), not just the three discussed in the brief or the 17 discussed in Yallop's Declaration, only some of which appear as characters (i.e., characters in a play) in Crane's play.

Poetic Products attempts to provide examples that allegedly "clearly show[ ] the similarity of expression, selection and coordination" between the works. (Poetic Products' Br. at 12.) These purported examples demonstrate Poetic Products' misunderstanding of copyright law's protection of selection and arrangement, particularly with regard to works comprised of historical facts.[3] Poetic Products gives three examples of purported "similarity of expression, selection and coordination:" (1) that both *The Last Confession* and *In God's Name* state "Mark Twain, Jules Verne"; (2) that "the most illustrious one" appears in *In God's Name* and "very illustrious" appears in *The Last Confession*; and (3) that *The Last Confession* states "I enjoyed your book" while *In God's Name* states "The book is a delight," both of which refer to a book that Luciani actually wrote (that can be purchased on Amazon.com[4]) called *Illustrissimi*. (Poetic Products' Br. at 12.) There is no dispute that Mark Twain and Jules Verne were both featured in

---

[3]    Indeed, Poetic Products cites *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991) of its brief to assert that a selection and arrangement of facts are afforded copyright protection. (Poetic Products Br. at 13.) What *Feist* actually holds is that the selection and arrangement of facts is "thin." *See id.* at 349 ("This inevitably means that the copyright in a factual compilation is thin. . . . Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement.").

[4]    *See* http://www.amazon.com/ILLUSTRISSIMI-LTTERS-POPE-JOHN-PAUL/dp/B000Z5VCG6.

Luciani's book *Illustrissimi*, and there is no dispute that *Illustrissimi* translates into "illustrious." Moreover, there is no dispute that the statement "I enjoyed your book" in *The Last Confession* is a line in the play said by the character of Benelli to Luciani,[5] while "The books is a delight" appears in Yallop's discussion of Luciani's *Illustrissimi* and his critique of "Luciani's unique ability to communicate."[6] Rather, Poetic Products asserts that these examples demonstrate a similarity of expression and "selection of words and persons discussed," because, for example, Crane and Yallop both place the name Mark Twain prior to the name Jules Verne in their respective works. (Poetic Products' Br. at 12.) Yet the rule of law is that it is the "over-all selection and arrangement of facts" in the work, not excerpted words and phrases, that constitutes protectible expression. *Churchill Livingstone v. Williams & Wilkins*, 949 F. Supp. 1045, 1050 (S.D.N.Y. 1996). Poetic Products does not argue that the overall selection and arrangement of *The Last Confession* and *In God's Name* are similar. It cannot. Poetic Products' examples accordingly only prove that both Roger Crane and David Yallop wrote works that contain some of the same unprotectible facts.

---

[5]
| Benelli: | Albino, it's good to see you. I enjoyed your book. |
| Luciani: | You did? Thank you. It was just some letters. |
| Benelli: | Yes (*smiling*.) But to Mark Twain, Jules Verne . . . very illustrious. What brings you to Rome? |
| Luciani: | I came to see His Holiness, but he is too busy. (To MAGEE with a warm smile.) Thank you. (MAGEE exists.) It must be a terrible thing to be Pope. |
| Benelli: | For some men. |
| Luciani: | It is bad enough being a cardinal. |

(*The Last Confession* at 11.)

[6] "Luciani reasoned that he had more chance of spreading the 'Good News' through the press than he did preaching to half-empty churches. Eventually a collection of the letters was published in book form, *Illustrissimi* – the most illustrious ones. The book is a delight. Apart from providing an invaluable insight into the mind of Albino Luciani, each letter comments on aspect of modern life. Luciani's unique ability to communicate, unique, at least, for an Italian cardinal, is demonstrated again and again. The letters are also clear proof of just how widely read Luciani was." (*In God's Name* at 48-49.)

In sum, *The Last Confession* and *In God's Name* are not substantially similar, and nothing submitted by Poetic Products alters this fact.

## II.    ANY USE BY CRANE OF *IN GOD'S NAME* CONSTITUTES FAIR USE

Crane explained in the Opening Brief that even if the works are substantially similar (which they are not), any use by Crane of *In God's Name* was a transformative use, and thus a fair one. (Opening Br. at 29-30.) Poetic Products, instead of delving into a discussion of transformative fair use under *NXIVM Corp. v. Ross Inst.,* 364 F.3d 471, 477 (2d Cir. 2004) and *Bill Graham Archives, LLC v. Dorling Kindersley Ltd.*, 386 F. Supp. 2d 324, 327 (S.D.N.Y. 2005), sets out the criteria for fair use with reliance on *Castle Rock Entertainment v. Carol Publ'g Group*, 150 F.3d 132 (2d Cir. 1998). *Castle Rock* could not be more different that the case at hand. In *Castle Rock*, defendant published a book titled *The Seinfeld Aptitude Test* ("SAT"), a "quiz book devoted exclusively to testing its readers' recollection of scenes and events from the fictional television series *Seinfeld*." *Id.* at 135. The Second Circuit affirmed summary judgment in favor of Castle Rock, the producer and copyright owner of each episode of the *Seinfeld* television series. In doing so, it explained that SAT was not transformative fair use of *Seinfeld* because "[t]he SAT's purpose, as evidenced definitively by the statements of the book's creators and by the book itself, is to repackage *Seinfeld* to entertain *Seinfeld* viewers," and that "the work as a whole, drawn directly from the *Seinfeld* episodes without substantial alteration, is far less transformative than other works we have held not to constitute fair use." *Id.* at 142-43. Here, a view of both works makes it clear that *The Last Confession's* purpose is not to repackage *In God's Name* to entertain the readers of *In God's Name*. Nor would it be reasonable to assert that *The Last Confession* "as a whole" is "drawn directly" from *In God's*

*Name*. *The Last Confession* is a work of fiction about a confession; it is not a historical account of events and thus is demonstrably transformative and wholly inapposite of *Castle Rock*.

In sum, Crane did not make use of any portions of *In God's Name* that were protected by copyright law, as any similarities between the works are factual. (*See* Duvdevani Decl. Exs. 1-3.) However, assuming *arguendo* that Crane appropriated *In God's Name*, such use of an investigative, factual book, for his creation of *The Last Confession*, a two act play, would be a transformative one, and thereby a fair use, preventing a finding of copyright infringement. *See, e.g.*, *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477 (2d Cir. 2004). To find otherwise would run contrary to the "purposes of copyright."

## III.   POETIC PRODUCTS' UK ALLEGATIONS ARE AT ISSUE AND FAIL UNDER UK LAW

Poetic Products' brief states that Crane has moved for summary judgment on Poetic Products' copyright infringement and unfair competition claims (Poetic Products Br. at 1), when in fact Crane moved for summary judgment on Poetic Products' counterclaims *as well as* on its own declaratory judgment claim, which is not limited to U.S. copyright law, but seeks a global judgment that *The Last Confession* does not infringe *In God's Name*. (Dkt. No. 11: Notice of Motion.) Judge Maas also noted that Crane has moved under U.K. copyright law. *See Crane v. Poetic Prods.*, 2008 U.S. Dist. LEXIS 34070 at *9. The Complaint is likewise not limited to seeking a declaratory judgment on Poetic Products' U.S. copyright allegations. (Dkt. No. 1: Compl. at 4.) The claims that Poetic Products has made against Crane under U.K. law are therefore squarely at issue.

There is no dispute that this Court can exercise authority over claims of foreign copyright infringement such as the one that Poetic Products asserted against Crane prior to his initiation of this action. (Opening Br. at 31.) Because the Court has personal jurisdiction over Poetic

Products (Compl. ¶ 11), and subject matter jurisdiction over the U.S. copyright claims, the Court has pendant jurisdiction to analyze the English claims at issue. (Opening Br. at 31.) It is also well-settled that under Fed. R. Civ. P. 44.1, a determination of foreign law is a question of law, and not a question of fact, that can be resolved on a motion for summary judgment. *See, e.g., Republic of Ecuador v. Chevrontexaco Corp.*, 499 F. Supp. 2d 452, 454 (S.D.N.Y. 2007) ("Prior to [Fed .R. Civ. P. 44.1's] enactment foreign law was a question of fact; now it is a question of law, which means that it may be determined at the summary judgment stage of litigation."); *Abu-Nassar v. Elders Futures*, 88 Civ. 7906, 1991 U.S. Dist. LEXIS 3794, at *16 n.8 (S.D.N.Y. Mar. 28, 1991) ("Since under Rule 44.1 the determination of foreign law is a question of law for the court, summary judgment may be an appropriate remedy in some cases, even if the opposing party offers the affidavit of an expert witness on foreign law in support of its claims.").

What Poetic Products does argue, however, is that summary judgment should be denied under U.K. copyright law because (1) Crane is not an expert on U.K. copyright law; (2) English courts have found "some potential real differences" between U.S. and U.K. copyright law; and (2) summary judgment "seems strange" to Poetic Products' declarant. (Poetic Products Br. at 20-22.) These arguments fail.

Crane does not advance that he is an expert on U.K. law, nor is such an expert required or particularly useful to the Court. Federal Rule of Civil Procedure 44.1 states in relevant part: "In determining foreign law, the court may consider any relevant material or source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Courts in this Circuit have stated that the best evidence of foreign law are foreign statutes or decisions themselves, and not experts hired by litigants opining on foreign law. *See, e.g., Films by Jove, Inc. v. Berov*, 250 F. Supp. 2d 156, 191 (E.D.N.Y. 2003) ("'Foreign court rulings

on the content of foreign law are ordinarily the best proof of that content.'") (quoting Michael D. Ramsey, Escaping "International Comity", 83 Iowa L. Rev. 893, 905 (1998)); *Rutgerswerke AG v. Abex Corp.*, 93 Civ. 2914, 2002 U.S. Dist. LEXIS 9965, at *51 (S.D.N.Y. June 3, 2002) ("[A] court may reject even uncontradicted expert testimony and reach its own decisions on the basis of independent examination of foreign legal authorities."); *Curtis v. Beatrice Foods Co.*, 481 F. Supp. 1275, 1285 (S.D.N.Y.) ("Expert testimony is no longer an invariable necessity in establishing foreign law, and indeed, federal judges may reject even the uncontradicted conclusions of an expert."); *aff'd.*, 633 F.2d 203 (2d Cir. 1980).

To this end, Crane has certainly not set out to prove that he is an expert, but has simply discussed the relevant U.K. decisions as well as the applicable sections of Paul Edward Geller & Melville B. Nimmer's International Copyright Law and Practice, which shed light on the Copyright, Designs and Patents Act. (Opening Br. at 18-20.) For the Court's convenience, these materials are annexed to the May 14, 2008 Reply Declaration of Tamar Y. Duvdevani ("Duvdevani Rep. Decl."). Further, two judges in this District have already held that U.K. and U.S. copyright law are similar.[7] *See Crane v. Poetic Prods.*, 2008 U.S. Dist. LEXIS 34070 at *3 n. 1; *Bridgeman Art Library v. Corel Corp.*, 25 F. Supp. 2d 421, 426 (S.D.N.Y. 1998). All of these authorities demonstrate that Crane's declaratory judgment claim should be granted in his favor under U.K. law. (*See* Opening Br. at 20-22; 30-32.)

---

[7]    Like U.S. copyright law, U.K. copyright law draws a distinction between works that contain technical or factual material: a copyist has been authorized under UK case law to take greater amounts than what would be permitted in works of fiction. *See Ravenscroft v. Herbert* [1980] R.P.C. 193, 205-06; *Warwick Film Productions Ltd. v. Eisinger,* [1969] 1 Ch 508 (holding that where the defendant had taken significant extracts from the transcripts of Oscar Wilde's trials contained in plaintiff's book, but not any of the plaintiff's editing or accompanying commentary, no infringement was found because "[t]he reproduction of a part which by itself has no originality will not normally be a substantial part of the copyright and therefore will not be protected."); Opening Brief at 21-22.

Turning to the May 6, 2008 Declaration of Michael Englehart QC ("Englehart Decl."), it is of primary importance to note that in rendering his opinion for Poetic Products, Mr. Englehart did not read the two works at issue, but kept his review limited to Crane's Opening Brief and the schedule that was prepared by Poetic Products' counsel that excerpted and highlighted portions of *In God's Name* and *The Last Confession*. (Englehart Decl. ¶¶ 2, 18)  Oddly, this did not stop him from suggesting that there are "remarkable similarities" in a "considerable number of passages." (Englehart Decl. ¶ 18)  The fact that he did not read the two works renders his opinion on U.K. law as it relates to the instant action useless.[8]  However, a review of Mr. Englehart's Declaration with regard to his opinion of U.K. copyright law generally reveals that nothing contained therein precludes finding for Crane on the U.K. claims, and in fact supports Crane's position.

Mr. Englehart states that under U.K. law, an inference of copying will arise if (1) the defendant's work reproduces a "substantial part" of the claimant's copyright work and (2) the defendant had access to that work, and that the defendant can rebut such an inference if he can satisfy the Court by evidence that he did not in fact copy but instead consulted a common source. (Englehart Decl. ¶ 8.)  Crane prevails under this test, which is not altogether different than U.S. copyright law.  A review of the works at issue demonstrates conclusively that *The Last Confession* does not reproduce a "substantial part" of *In God's Name,* negating Poetic Products' claims under U.K. law as it is described by Mr. Englehart.  Moreover, Crane has testified in his Declaration (which Mr. Englehart did not read) that he used various sources for researching and writing his play apart from *In God's Name* and in fact cited and quoted specific passages he relied upon in these works (Crane Decl. ¶ 15, Ex. C), rebutting any inference of copying even if

---

[8]    Nor did Englehart read any of the other works Crane relied on that contained all the same facts.

*The Last Confession* reproduces a "substantial part" of *In God's Name* (which it does not).[9]

Accordingly, Crane has defeated Poetic Products' allegations of infringement under U.K. law,

even as described by its own expert.

Mr. Englehart's two other points are that (1) *Baigent v. Random House*, discussed by

Crane, was criticized by the Court of Appeal, and (2) summary judgment "seems strange" to him

in this action. (Englehart Decl. ¶¶ 14-17; 19.) With regard to the first of these points, Mr.

Englehart acknowledges that *Baigent* was affirmed by the Court of Appeal, and a review of the

appellate decision (annexed to Englehart's Declaration as Exhibit D and the Reply Duvdevani

Declaration as Exhibit 2), including the passages excerpted by Mr. Englehart, does not negate

any of Crane's arguments as to why summary judgment should be granted under U.K. law. (*See*

*id.*) With regard to Mr. Englehart's views on summary judgment, they are irrelevant. In the

federal courts of this country, a party is entitled to summary judgment where "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c). Crane has demonstrated via this motion that there is no genuine

issue as to any material fact and that he is entitled to judgment as a matter of law. Indeed, all

paragraphs of Crane's 56.1 Statement were admitted by Poetic Products, and Poetic Products'

56.1(b) Statement is comprised of questions of law or questions not relevant to this motion and

---

[9]    U.K. copyright law as described by Mr. Englehart is similar to the doctrine of independent creation. "Even where a plaintiff is successful in creating a triable issue of fact with respect to actual copying, a defendant may defeat a copyright infringement claim by demonstrating independent creation of the allegedly infringing work." *Silberstein v. Fox Entm't Group, Inc.*, 424 F. Supp. 2d 616, 628 (S.D.N.Y. 2004), *aff'd*, 2007 U.S. App. LEXIS 14128; 82 U.S.P.Q.2D (BNA) 1958 (2d Cir. June 14, 2007). "Evidence of independent creation is an established ground for granting summary judgment." *Id.* (citing *Cox v. Abrams*, 93 Civ. 6899, 1997 U.S. Dist. LEXIS 6687, at *7 (S.D.N.Y. May 14, 1997) (granting summary judgment based on uncontroverted evidence of independent creation)). Poetic Products has not cast doubt on Crane's declaration testimony that he relied upon many other sources that contained the same information allegedly copied from *In God's Name*. Accordingly, Poetic Products has failed to offer a reason under U.K. law why summary judgment should not be granted in favor of Crane, even if Mr. Englehart's opinion of copyright infringement under U.K. law is correct.

improperly cites to the pleadings in violation of Local Rule 56.1(d) and Fed. R. Civ. Proc.

56.1(e). (Crane Response to Poetic Products' 56.1(b) Statement.) Moreover, Englehart opines

that the "concept of summary judgment without a trial in a copyright action like the present one

does seem strange" "given [the] similarities." (Englehart Decl. ¶ 19) (emphasis added), yet

Englehart never read the two works, precluding an opinion on what type of copyright action the

"present one" actually is and whether any similarities exist between the works.

In sum, for the reasons set forth herein and in the Opening Brief, Crane is entitled to

summary judgment under U.K. copyright law.

## IV.    POETIC PRODUCTS' SECOND COUNTERCLAIM IS PREEMPTED BY FEDERAL LAW

Poetic Products' second count alleges that "Crane's act and conduct, as alleged above,

constitute unfair competition under applicable common law." (Answer and Counterclaims at

10.) In the Opening Brief, Crane demonstrated that this count is preempted by the Copyright Act

because the claim is "based on the same conduct as its copyright claim[]." *Video-Cinema Films,*

*Inc. v. CNN, Inc.*, 98 Civ. 7128, 2001 U.S. Dist. LEXIS 25687, at *33 (S.D.N.Y. Nov. 28, 2001)

(Jones, J.) (*see also* Opening Br. at 32.) Judge Maas noted this point in his April 23, 2008 Order,

stating:

> PPL's second counterclaim is that Crane's allegedly infringing conduct constitutes
> common law unfair competition. However, PPL's unfair competition
> counterclaim is based solely on the allegations made in its copyright infringement
> counterclaim. PPL's unfair competition counterclaim therefore appears to be
> preempted by federal law. *See Briarpatch Ltd., L.P. v. Phoenix Pictures*, 373 F.3d
> 296, 305-06 (2d Cir. 2004); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d
> 693, 717 (2d Cir. 1992); Walker, 784 F.2d at 53; *Silverstein v. Penguin Putnam,*
> *Inc.*, 522 F. Supp. 2d 579, 608 (S.D.N.Y. 2007); *Orange County Choppers, Inc. v.*
> *Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 556 (S.D.N.Y. 2007). Although this is a
> merits-based question which is properly before Judge Jones, not me, the law in
> this area is sufficiently clear that I see no need for discovery with respect to PPL's
> unfair competition claim before Judge Jones has had an opportunity to rule on
> Crane's motion.

*Crane v. Poetic Prods.*, 2008 U.S. Dist. LEXIS 34070 at *10 (citations to record omitted.).

Poetic Products does nothing to counter this point in its opposition papers, tacitly acknowledging

the claim's failures.  As set forth in Judge Maas' Order and in the Opening Brief, this Count

must be dismissed.

**CONCLUSION**

In light of the foregoing, Plaintiff Roger R. Crane, Jr. respectfully requests that this Court

grant Crane's Summary Judgment Motion and declare that Crane's *The Last Confession* does not

infringe *In God's Name* under U.S. and U.K. copyright law.


Dated: May 14, 2008
         New York, New York

**NIXON PEABODY LLP**

By:    __/s/ Frank Penski_____
             Frank H. Penski (FP-9221)
             Tamar Y. Duvdevani (TD-7603)

437 Madison Avenue
New York, New York 10022
Telephone:  (212) 940-3000

11011962.62